**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**



FILED
CLERK, U.S. DISTRICT COURT

APR 2, 2019

CENTRAL DISTRICT OF CALIFORNIA
BY:      BH      DEPUTY

Bryan E. Glynn,

        Plaintiff,

        v.

LA Lounge, LLC,

        Defendant.

2:18-cv-06774 VAP (SKx)

**Order GRANTING Plaintiff's Application for Default Judgment (Doc. No. 17.)**

On August 7, 2018, Bryan E. Glynn ("Plaintiff") filed his Complaint against LA Lounge, LLC ("Defendant"), bringing claims for: (1) copyright infringement; and (2) removal of copyright management information.  (Doc. No. 1).

Plaintiff personally served Defendant's registered agent for service on August 20, 2018.  (Doc. No. 13.)  Federal Rule of Civil Procedure 12 (a)(1) requires a defendant to answer within 21 days after being served with the summons and complaint, but Defendant has yet to appear in this case. Consequently, on September 11, 2018, Plaintiff requested that the clerk enter default judgment against Defendant, (Doc. No. 14), and the clerk did so on September 12, 2018, (Doc. No. 15).

On January 10, 2019, Plaintiff filed his Application for Default Judgment against Defendant.  (Doc. No. 17.)  In his memorandum of points and authorities, Plaintiff also included a request to affix fees.  (*Id.*)

After considering all papers filed in support of Plaintiff's unopposed Application for Default Judgment, the Court GRANTS Plaintiff's Application for Default Judgment.

## I. BACKGROUND

Plaintiff is a professional photographer and "master of lighting" who is the founder of a cigar website and produces "one of the most popular cigar video review YouTube channels."  (Doc. No. 1 ¶ 2.)  Plaintiff alleges that Defendant took Plaintiff's copyrighted photographs from the internet to promote and market its business.  (*Id.* ¶ 5.)  The photographs appeared on Defendant's website no later than May 1, 2017 and were removed no earlier than April 4, 2018.  (Doc. No. 17-8 at 5.)

## II.   LEGAL STANDARD

### A.  Local Rule 55-1

Local Rule 55-1 provides that an application for default judgment must be accompanied by a declaration in compliance with Federal Rule of Civil Procedure 55(b) setting forth, *inter alia*, when and against what party the default was entered and the identification of the pleading to which default was entered.  Plaintiff has provided this.  (Doc. No. 17.)

**B.   Default Judgment**

Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a party who "fail[s] to plead or otherwise defend" a claim.  Fed. R. Civ. P. 55 (a)-(b)(2).  "Even if entry of default has been made by the court clerk, granting a default judgment is not automatic; rather it is left to the sound discretion of the court."  *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).

In exercising its discretion to grant or deny an application for default judgment, the Court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits (collectively, "*Eitel* factors").  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors.  *Mnatsakanyan v. Goldsmith & Hull APC*, No. 2:12-cv-04358-MMM-PLAx, 2013 WL 10155707, at *10 (C.D. Cal. May 14, 2013).

### III.   DISCUSSION

**A.   Default Judgment**

Generally upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.  *Televideo*

1   *Sys. Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see also*

2   *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); Fed. R. Civ.

3   P. 8(b)(6).  Pursuant to Rule 8(b)(6), the Court accepts as true the

4   allegations in the unanswered Complaint and the statements in the

5   declarations submitted in support of Plaintiff's Application for Default

6   Judgment.

7       In applying the *Eitel* factors, the Court finds that Plaintiff is entitled to

8   default judgment.  The Court will discuss each factor in turn.

9

10      1. <u>Possibility of Prejudice to Plaintiff</u>

11       The first *Eitel* factor considers "whether the plaintiff will suffer prejudice

12  if default judgment is not entered."  *PepsiCo, Inc. v. California Sec. Cans*,

13  238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Here, Plaintiff contends that

14  he will be without recourse and suffer prejudice unless default judgment is

15  entered.  (Doc. No. 17.)  The Court agrees that absent entry of a default

16  judgment, Plaintiff will most likely be without recourse against Defendant,

17  given Defendant's unwillingness to cooperate and defend.  Accordingly, this

18  factor favors entry of default judgment.  *See Vogel v. Rite Aid Corp.*, 992 F.

19  Supp. 2d 998, 1007 (C.D. Cal. 2014) (hereinafter "*Rite Aid*").

20

21      2. <u>The Merits of Plaintiff's Substantive Claims and Sufficiency of the</u>
        <u>Complaint</u>

22      The second and third *Eitel* factors "require that a plaintiff state a claim on

23  which [the plaintiff] may recover."  *PepsiCo*, 238 F.Supp.2d at 1175.  Plaintiff

24  brings two claims against Defendant: (1) copyright infringement; and (2)

25  removal of copyright management information.  (Doc. No. 1).  The Court

26  finds that Plaintiff has successfully stated a claim upon which he may

United States District Court
Central District of California

4

recover for both claims, and therefore these two factors favor entry of default judgment against Defendant.

        a.    <u>Plaintiff's Copyright Infringement Claim</u>

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Company*, 499 U.S. 340, 361 (1991).  As direct evidence of copying is rarely available, "a plaintiff may establish copying by showing that the infringer had access to the work and that the two works are substantially similar," a test that "is necessarily imprecise."  *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990).  As noted above, however, upon default judgment, all facts in the complaint will be taken as true.

Here, Plaintiff has met the first element, as the registration for "Cigar Photographs," issued by the Copyright Office on January 21, 2017 is attached to the complaint.  (Doc. No 1-1 at 2.)  This is proof of Plaintiff's ownership of a valid copyright.

Plaintiff has also met the second element, attaching images from Defendant's website that demonstrate improper use of the copyrighted photographs.  (Doc. No. 1-2.)  Plaintiff alleges Defendant never received permission to display the photographs.  Accordingly, both elements of the copyright infringement claim are met, and Plaintiff has successfully stated a claim upon which he may recover damages.

United States District Court
Central District of California

United States District Court
Central District of California

b.  <u>Plaintiff's Removal of Copyright Management Information Claim</u>

Plaintiff also brings a claim for removal of copyright management information, in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b).  This statute provides that,

> No person shall, without the authority of the copyright owner or the law—(1) intentionally remove or alter any copyright management information, (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or…having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

Plaintiff has alleged that Defendant copied and displayed the photographs after removing Plaintiff's copyright management information from the works, (Doc. No. 1 ¶ 24), did so without permission, (*id.* ¶ 25), and distributed them via Defendant's internet website, (*id.* 18).  The images attached to Plaintiff's Complaint support these allegations.  (Doc. No. 1-2.)  Plaintiff has thus stated a claim for removal of copyright management information.

3. <u>The Sum of Money at Stake</u>

The fourth *Eitel* factor "takes into account the amount of money at stake and the seriousness of the defendant's conduct, which involves an assessment of whether the recovery sought is proportional to the harm which the defendant's conduct has caused."  *Trustees of Teamsters Local*

6

*631 Sec. Fund for S. Nevada v. Knox Installation-Dismantling & Servs., Inc.*, No. 2:12-cv-1689-JAD-GWF, 2013 WL 4857897, at *2 (D. Nev. Sept. 9, 2013).

Plaintiff states his request for statutory damages in varying amounts. First he requests $72,000 (Doc. No. 17 at 21), then $75,000 (*id.* at 28), and finally $147,000, as well as attorneys' fees and costs in the amount of $7,050.90, (*id.* at 30). The sum of money at stake is therefore reasonable when balanced against the Defendant's failure to appear and defend Plaintiff's claims. *See e,g, Myeress v. USA World Business Servvice, Inc.*, No. 16-CV-05236-YGR, 2017 WL 976916, at *1 (N.D. Cal. Mar. 14, 2017) (awarding $45,000 in damages for copyright infringement of a photograph); *National Photo Group, LLC v. Pier Corporation*, No. CV 13-cv-1165 DOC (JPRx), 2014 WL 12576641, at *5 (C.D. Cal. Mar. 10, 2014) (awarding $13,500 in statutory damages for copyright infringement of a photograph). Accordingly, this factor weighs in favor of entry of default judgment.

### 4. Possibility of a Dispute Concerning Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *PepsiCo*, 238 F.Supp.2d at 1177. Upon entry of default by the clerk, the factual allegations of the complaint, except those relating to the amount of damages, are taken as true. *Televideo Sys. Inc.*, 826 F.2d at 917-18. Here, Plaintiff has adequately alleged violations of copyright infringement and removal of copyright management information in his Complaint. There is therefore little possibility of a dispute concerning material facts. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393

(C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").

### 5. Possibility of Excusable Neglect

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo*, 238 F.Supp.2d at 1177.  Where the defaulting party is "properly served with the Complaint, the notice of entry of default, as well as the papers in support of the [default] motion," the failure to defend cannot be attributed to excusable neglect.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).  Here, Defendant was served with the Complaint, (Doc. No. 13), and the papers in support of Plaintiff's motion, (Doc. No. 17-1 at 3).  Service of the Complaint occurred six months ago.  (Doc. No. 13.)  Defendant also removed the infringing images from its website after receiving Plaintiff's demand letter.  (Doc. No. 17-1 at 4.)  There appears little possibility that the default resulted from excusable neglect.

### 6. The Strong Public Policy Favoring Decisions on the Merits

Though "[c]ases should be decided upon their merits whenever reasonably possible," a defendant's failure to respond "makes a decision on the merits impractical if not impossible."  *Eitel*, 782 F.2d at 1472.  As the Federal Rules of Civil Procedure allow for termination of a case before a hearing on the merits where a defendant fails to defend an action, this factor also favors entry of default judgment against Defendant.

United States District Court
Central District of California

Accordingly, because each *Eitel* factor favors entry of default, the Court enters default judgment against Defendant.

**B. Plaintiff's Requested Relief**

Federal Rule of Civil Procedure 55(b)(2) "explicitly grants the district court wide latitude" in providing relief in a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *Elektra Entm't*, 226 F.R.D. at 394.

1. Damages

Plaintiff requests significant statutory damages for each of his claims, rightly noting that it is impossible for him to seek damages based on Defendant's unlawfully obtained profits, as Defendant has not participated in the case. (Doc. No. 17 at 25). "Statutory damages are particularly appropriate in a case, such as this one, in which defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiffs' actual damages." *Jackson v. Sturkie*, 255 F.Supp.2d 1096, 1101 (N.D. Cal. 2003).

a. Plaintiff's Claim for Copyright Infringement

Plaintiff seeks an enhanced damage assessment of $72,000 due to Defendant's copyright infringement, noting the willful nature of Defendant's behavior. (Doc. No. 17 at 25.) 17 U.S.C. § 504(c)(2) provides that if a court finds "that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." The Ninth Circuit has found that willfulness "can be based on either 'intentional' behavior, or merely 'reckless' behavior." *Friedman v. Live*

United States District Court
Central District of California

*Nation Merchandise, Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016).  Here, Plaintiff has demonstrated that Defendant's behavior was willful. Defendant's website prominently featured three of Plaintiff's photographs, which were taken down after Plaintiff sent a demand letter, (Doc. No. 1), implying that Defendant was aware of the protected nature of the work.

Plaintiff claims that he licenses similar photographs for $3,000 (Doc. No. 17-8 ¶ 7), and requests that this amount be multiplied by four to deter future infringement, (Doc. No. 17 at 27).  This would result in a penalty of $12,000 per photograph, or $36,000 total.  As noted above, courts have assessed statutory penalties of tens of thousands of dollars for copyright infringement. Courts have also awarded far less sums of money.  *See, e.g., Rosen v. Netfronts, Inc.*, No. CV 12–658 CAS (FFMx), 2013 WL 3467205 (C.D. Cal. July 9, 2013) (awarding $800 for infringement of four photographs).  The Court therefore finds that damages in the amount of $12,000 per photograph are appropriate.

Plaintiff also avers that Defendant's unauthorized use has greatly reduced the market value of these unique photographs, (Doc. No. 17-8 ¶¶ 12-13), and therefore requests a "scarcity multiplier" of two to four times the licensing fee.  In support of this argument, Plaintiff relies on *Leonard v. Stemtech International Inc.*, 834 F.3d 376 (3d Cir. 2016), in which the Third Circuit upheld a jury verdict that considered the scarce nature of a photographer's copyrighted photographs of human bone marrow stem cells. In that case, because the record demonstrated that the multiplier "was used to calculate fair market value," the Third Circuit determined that it was

United States District Court
Central District of California

impossible to "say that the verdict is based upon an improper consideration." *Leonard*, 834 F.3d at 393-394.  Plaintiff has provided no Central District or Ninth Circuit cases considering the scarcity of a protected photograph.  The Court declines to apply a scarcity multiplier to Plaintiff's damages for infringement of his photographs of cigars.

  b.  Plaintiff's Claim for Removal of Copyright Management Information

Plaintiff also seeks $75,000 in damages, pursuant to the Digital Millennium Copyright Act.  (Doc. No. 17 at 29.)  17 U.S.C. § 1203(c)(3)(B) provides that, "At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." Plaintiff includes no cases to support his request for the maximum statutory damages allowed by law.  Plaintiff has demonstrated Defendant's willful conduct, however, and the Court finds that damages of $15,000 per each of Defendant's three violations, or $45,000 total are appropriate.

  2. Injunctive Relief

Plaintiff also requests permanent injunctive relief enjoining Defendant from displaying Plaintiff's copyrighted photographs. Both the Copyright Act and the Digital Millennium Copyright Act permit permanent injunctions to prevent future infringement, so long as the terms are reasonable.  *See* 17 U.S.C. §§ 502(a), 1203(b)(1).  To obtain such relief, a "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the

11

plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 1839 (2006) (citations omitted).  Central District courts routinely grant such injunctions on motions for default judgment when a plaintiff meets the requirements of *eBay*.  *See, e.g.  Amini Innovation Corp. v. KTY International Marketing*, 768 F.Supp.2d 1049, 1057 (C.D. Cal. 2011); *Munhwa Broadcasting Corp. v. Create New Tech. Co.*, No. CV 14-04213 RGK (RZx), 2015 WL 12752536, at *8 (C.D. Cal. Sept. 2, 2015); *Chan Luu, Inc. v. Guang Gao d/b/a Wrapbraceletshut.com*, No. CV 13-2997 FMO (JCx), 2014 WL 12567141, at *8 (C.D. Cal. Jan. 27, 2014); *Nexon America Inc. v. Kumar*, No. CV 11-06991 ODW (PJWx), 2012 WL 1116328, at *7 (C.D. Cal. Apr. 3, 2012).

The Court finds an injunction to be appropriate in this case.  While Defendant has removed Plaintiff's photographs from its website, Plaintiff would be irreparably harmed by further infringement, which will devalue his copyrighted work.  Second, monetary damages are inadequate to compensate Plaintiff, as Defendant's refusal to participate in this case has deprived Plaintiff of the opportunity to determine his damages with precision.  Third, considering the balance of hardships, Defendant's removal of the infringing material means that an injunction merely compels Defendant to comply with the Copyright Act—hardly a hardship.  Finally, the public interest weighs in favor of an injunction, as permitting businesses to infringe copyrighted material serves no public interest whatsoever.  The Court therefore GRANTS Plaintiff's request for a permanent injunction enjoining Defendant from distributing the photographs at issue.

United States District Court
Central District of California

### 3. <u>Attorneys' Fees and Costs</u>

Finally, Plaintiff requests attorneys' fees of $6,540.00 and costs in the amount of $510.90.  (Doc. No. 17 at 29-30.)  The Ninth Circuit has dictated that when a party properly requests attorneys' fees in default actions, "the court is obliged to calculate a 'reasonable' fee in the usual manner," i.e. the lodestar method, without using the fee schedule set out in Local Rule 55-3 as a starting point.  *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159 (9th Cir. 2018).

### a.    <u>Attorneys' Fees: The Lodestar Method</u>

The Ninth Circuit "emphasize[d] that the lodestar amount is calculated by multiplying 'the number of hours *reasonably* expended on the litigation by a *reasonable* hourly rate.'"  *Vogel*, 893 F.3d 1152, 1159 (9th Cir. 2018) (quoting *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012)) (emphasis in original).  District courts "have a *duty* to ensure claims for attorneys' fees are reasonable," and, particularly in default actions, "a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer."  *Vogel*, 893 F.3d at 1159 (quoting *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993)).  The district court must instead scrutinize attorneys' fees requests where the defendant fails to appear or otherwise defend itself.  *Vogel*, 893 F.3d at 1159; *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (holding that once a party has established that it is entitled to an award of attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable'").

United States District Court
Central District of California

First, the Court must determine the number of hours reasonably expended.  "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'"  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 434).  While not providing a breakdown of his hours, Plaintiff's counsel declares that, given his "standard hourly billing rate of $395, our client has incurred attorney's fees of at least $6,540.00 in connection with the pursuit of Plaintiff's claims against Defendant."  (Doc. No. 17-1 at 4.)  This amounts to approximately sixteen and a half hours spent on this case.  The Court finds this to be reasonable.

Second, the Court must determine whether the requested hourly rates are reasonable.  When calculating the lodestar, courts do not necessarily use the actual rate charged by a party's attorney.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985) ("Determination of a reasonable hourly rate is not made by reference to rates actually charged the prevailing party.").  Rather, "[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Id.* at 1210-11; *see Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984) (holding that the requested rates must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").  The party requesting fees bears the burden of adducing evidence that the requested rates are in line with prevailing rates for lawyers of reasonably comparable skill and

14

reputation in the community. *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

Plaintiff's counsel has failed to support his hourly rate with survey evidence or declarations from other attorneys in the field to provide the Court with the "rate prevailing in the community" for this type of work. Counsel has ignored that the "[d]etermination of a reasonable hourly rate is not made by reference to rates actually charged." *Chalmers*, 796 F.2d at 1210. As district courts in default judgment cases "have a *duty* to ensure claims for attorneys' fees are reasonable" the Court employs its discretion to determine the reasonable rates. *Vogel*, 893 F.3d at 1159 (emphasis in original). The Court finds the hourly rate of $395 per hour to be reasonable. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (Finding that a district court may rely "in part, on its own knowledge and experience" to determine reasonable hourly rates when awarding attorneys' fees).

Finally, the Court must assess whether additional considerations require adjustment of the figure, such as novelty and complexity of the issues, the specific skill and experience of counsel, the quality of representation, and the results obtained. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). The Court finds no additional considerations that would require an adjustment because the Court has already considered the straightforward nature of the issues, and the skill of counsel above.

b.   <u>Costs</u>

Plaintiff's counsel requests costs in the amount of $510.00.  (Doc. No. 17 at 30.)  This figure includes $400.00 in filing fees, and $75.00 for service of process, $35.90 for courier expenses.  (Doc. No. 17-5.)  The Court finds these costs to be reasonable and grants Plaintiff's request.

### IV.   CONCLUSION

The Court GRANTS Plaintiff's Application for Default Judgment.  The Court awards Plaintiff $81,000.00 in statutory damages, $6,540.00 in attorneys' fees, and $510.90 in costs.

**IT IS SO ORDERED.**

Dated:   4/2/19

Virginia A. Phillips
Chief United States District Judge